# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America, | ) |
|         Plaintiff, | ) **ORDER DENYING DEFENDANT'S** |
| | ) **MOTION TO REDUCE SENTENCE** |
| vs. | ) |
| Shayla Left Hand, | ) Case No. 1:16-cr-189 |
|         Defendant. | ) |

Before the Court is the Defendant's motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), filed on August 4, 2023. See Doc. No. 152. The Government filed a response in opposition to the motion on August 15, 2023. See Doc. No. 154. The Defendant filed a reply on August 22, 2023. See Doc. No. 155. For the reasons set forth below, the motion is denied.

## I.     BACKGROUND

On August 3, 2016, Left Hand was charged in a six-count indictment with the crimes of child neglect in Indian country in violation of 18 U.S.C. §§ 2 and 1153; N.D.C.C. § 14-09-22.1 and 12.1-32-01 (Counts One, Two, Five, and Six); child abuse in Indian country in violation of 18 U.S.C. §§ 1153, 3559(f)(2) and 3559(f)(3) and N.D.C.C. §§ 14-09-22 and 12.1-32-01 (Count Three) and assault resulting in serious bodily injury in violation of 18 U.S.C. § § 113(a)(6), 3559(f)(2), 3559(f)(3), and 1153 (Count Four). Left Hand's co-defendant, Calvin Crow Eagle, was charged in Counts One, Two, and Five. See Doc. No. 1. The third count charged against Left Hand carried a 25-year mandatory minimum term of imprisonment pursuant to 18 U.S.C. § 3559(f)(2).

On February 8, 2017, Left Hand pled guilty to an information, which removed the 25-year mandatory minimum term of imprisonment of Court Three and dismissed Count Four. See Doc. Nos.

1

53 and 59. Count Three of the Information still included a violation of 18 U.S.C. § 3559(f)(3) that required a mandatory minimum ten-year sentence. See Doc. No. 53. The amended plea agreement provided, in relevant part, that the Government would recommend a sentence of 15-years while Left Hand could recommend any sentence below 15-years, limited by the ten-year mandatory minimum. See Doc. No. 57.

On May 30, 2017, the Court sentenced Left Hand to an aggregate 20-year term of imprisonment: 5-years on Count One; 5-years each on Counts Two, Five, and Six, to run concurrent with each other but consecutive to Count One; and 10-years on Count Three, to run consecutive to all other counts. See Doc. No. 89. Left Hand's co-defendant, Crow Eagle, pled guilty to Counts One, Two and Five of the Indictment and was sentenced to 3-years of imprisonment. See Doc. Nos. 63 and 90.

Left Hand appealed. See Doc. No. 82. The Eighth Circuit vacated Left Hand's sentencing, finding the court did not adequately explain the disparity between Left Hand and Crow Eagle's respective sentences. See Doc. No. 118-1. The Eighth Circuit remanded Left Hand's case with instructions to the court to:

> more fully explain the sentence it imposes, after giving due consideration to the 18 U.S.C. § 3553(a) factors, including Left Hand's "history and characteristics" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

See id. On remand, the parties stipulated to an aggregate 15-year sentence. See Doc. No. 130. The Court adopted the stipulation and issued an Amended Judgment imposing a 180-month sentence. See Doc. No. 132.

On August 4, 2023, Left Hand filed the current motion seeking a reduction of sentence and compassionate release under 18 U.S.C. § 3582(c)(1)(A) citing sexual abuse she had been subjected

2

to by a BOP official while incarcerated as an "extraordinary and compelling" reason for a sentence reduction. See Doc. No. 152. The Government filed a response in opposition to the motion. See Doc. No. 154. Left Hand is currently serving her sentence at FCI Greenville in Greenville, Illinois. Left Hand's presumptive release date of June 8, 2028.

## II.     LEGAL DISCUSSION

18 U.S.C. § 3582(c)(1)(A) allows the Court to modify a term of imprisonment under two circumstances: by motion of the Director of the BOP or upon motion of the Defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." In this case, it is undisputed the Left Hand has exhausted her administrative remedies.

In considering a motion to reduce sentence, the Court must assess whether, after considering the 18 U.S.C. § 3553(a) factors, "extraordinary and compelling reasons" exist which warrant a sentence reduction, and if a sentence reduction is consistent with the Sentencing Commission's applicable policy statement. See 18 U.S.C. § 3582(c)(1)(A). There is no right to counsel in Section 3582(c) proceedings. United States v. Brown, 565 F.3d 1093, 1094 (8th Cir. 2009). Nor is there a right to a hearing. See Dillon v. United States, 560 U.S. 817, 827-28 (2010) (observing that, under Federal Rule of Criminal Procedure 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).

Prior to the passage of the First Step Act in 2018, district courts could only grant compassionate release sentence reductions based upon a motion filed by the director of the BOP. Such motions were rarely filed. This all changed when the First Step Act was signed into law on

December 21, 2018. The relevant portion of the new law now reads as follows:

> **(c) Modification of an imposed term of imprisonment**.--The court may not modify a term of imprisonment once it has been imposed except that–
>
> **(1)** in any case–
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, <u>or upon motion of the defendant</u> after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–
>
> **(i)** extraordinary and compelling reasons warrant such a reduction;
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C.A. § 3582(c)(1)(A)(i) (emphasis added).

Unfortunately, the First Step Act does not define "extraordinary and compelling reasons." The applicable Sentencing Commission policy statement can be found at Section 1B1.13 of the 2023 Sentencing Guidelines Manual. Section 1B1.13 provides as follows:

> **(a)**   **In General**.--Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that–
>
> **(1)**   **(A)** Extraordinary and compelling reasons warrant the reduction; or
>
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

**(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)** The reduction is consistent with this policy statement.

**(b) Extraordinary and Compelling Reasons**.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

**(1) Medical Circumstances of the Defendant**.--

**(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(B)** The defendant is–

**(i)** suffering from a serious physical or medical condition,

**(ii)** suffering from a serious functional or cognitive impairment, or

**(iii)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

**(D)** The defendant presents the following circumstances–

**(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

>> **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
>> **(iii)** such risk cannot be adequately mitigated in a timely manner.
>
> **(2) Age of the Defendant**.--The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> **(3) Family Circumstances of the Defendant**.--
>
>> **(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
>> **(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>> **(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
>> **(D)** The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.
>
> **(4) Victim of Abuse**.--The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
>
>> **(A)** sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim); or

>> **(B)** physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);

> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

> For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

> **(5) Other Reasons**.--The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

> **(6) Unusually Long Sentence**.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

**(c) Limitation on Changes in Law**.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

**(d) Rehabilitation of the Defendant**.--Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

**(e) Foreseeability of Extraordinary and Compelling Reasons**.--For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of

imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

U.S.S.G. § 1B1.13.

The Court must also consider whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.12. Whether to grant relief under Section 3582(c)(1)(A) is vested in the sound discretion of the district court. United States v. Vangh, 990 F.3d 1138, 1140 (8th Cir. 2021).

In order to satisfy the criteria set forth in Section 1B1.13(b)(4), Left Hand must establish she was the victim of sexual abuse committed by a correctional officer. In order to do so, the sexual abuse must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding. The only exception is when the proceedings are unduly delayed or the defendant is in imminent danger.

On April 13, 2023, the correctional officer in this case was indicted in federal court in California for sexually assaulting Left Hand. See United states v. Smith, No. CR 23-0010 (N.D. Cal. April 13, 2013). The officer has not yet been convicted and is out on bond. Left Hand has been transferred to a different BOP facility. It is fairly debatable whether this criminal proceeding has been "unduly delayed," a phrase the Sentencing Guidelines do not define. A review of the docket sheet in the criminal case does not reveal a trial date or a plea agreement. Left Hand is not in imminent danger. Left Hand suggests her circumstances meet the criteria set forth in Section 1B1.13(b)(5) for a combination of circumstances which are of similar gravity but the Court is unpersuaded. The Court concludes Left Hand has not established "extraordinary and compelling reasons" for a sentence reduction because the corrections officer that sexually abused her has not been convicted. In so

finding, the Court does not in any way dismiss the severity of Left hand's allegations.[1]

However, even assuming Left Hand could establish she meets the criteria set forth in Section 1B1.13(b)(4) at the present time, or is able to do so at some point in the future, the Court finds the sentencing factors under 18 U.S.C. § 3553(a) weigh against any sentence reduction <u>at this time</u>. The 18 U.S.C. § 3553(a) factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The Court originally imposed a sentence of 20-years. After the Eighth Circuit Court of Appeals remanded the case for further explanation of the disparity in the sentences given to Left Hand and her co-defendant, the parties stipulated to a reduced sentence of 15-years which the Court adopted. <u>See</u> Doc. No. 130. The sentence was intended to reflect the seriousness of the offenses committed and provide just punishment. Left Hand's offenses include multiple child abuse and neglect offenses against children under the age of 12. As detailed in the Presentence Investigation Report ("PSR"), Left Hand presents a significant risk to re-offend. <u>See</u> Doc. No. 64, ¶¶ 74-79.

These <u>undisputed facts</u> in the PSR reveal the horrendous and disturbing acts of child abuse and neglect committed by Left Hand:

> 4.  The investigation was initiated by the Bureau of Indian Affairs. On July 17, 2016, law enforcement was called to the residence of codefendant Calvin

---

[1]. If the criminal misconduct of the correctional officer at issue - Officer Darrell Wayne Smith - is established by a conviction in a criminal case, the Court may reconsider this decision. However, Section 1B1.13(b)(4) clearly requires the misconduct "must be established by a conviction."

       Crow Eagle and the defendant, Shayla Left Hand. Upon arrival Crow Eagle reported his vehicle was "all busted up" and his son had "scratches and scrapes." The vehicle was observed with the windows broken out. Left Hand was sitting in front of the house holding a child. Crow Eagle advised that the defendant had caused the damage to his vehicle and said his four-year-old son, R.C.E., was inside the residence and needed medical care.

5. Officers entered the residence where they found the male child seated on the toilet naked. Officers immediately noticed burns on the child's legs and asked what had happened. Crow Eagle stated that Left Hand said it happened in the shower and he noticed his son "walking funny" at the store the day prior. An ambulance arrived at the residence. Crow Eagle is the son's father and Left Hand is his step-mother.

6. Left Hand reported that R.C.E. had an "accident" in the middle of the night and she told him to take a shower and that he must have just turned the hot water on. She reported this occurred four or five days prior. She later stated she had not taken him to the hospital because she was afraid of Crow Eagle. When officers confronted Left Hand about her water getting hot enough to burn skin off, she explained that the water heater had been turned all the way up and they only realized it a few days prior. Crow Eagle relayed that he had just realized the injuries were serious and that is what led to the argument with Left Hand, who went outside and began hitting his car with a pick axe.

7. There were two other children in the home and Left Hand was identified as pregnant with what she stated was a high risk pregnancy, for reasons unknown to her. R.C.E. was transported to the emergency room at IHS. He had severe burns over a large portion of his back, buttocks, hands, groin area, and legs. His skin was blistered and peeled away in many areas. He had bruising beginning under his left eye and appeared severely malnourished, as his ribs were clearly visible and his belly button was distended. The doctor advised that he estimated 40 to 60 percent of R.C.E.'s body had second or third degree burns, and that he could possibly die. The victim was transported by air ambulance to a burn unit in Hennepin County, MN, for care. While awaiting transport, a nurse told officers that Crow Eagle had come to the ER seeking antibiotic ointment earlier in the day, and had left angrily when he was told the person needing the ointment was required to be seen to receive medication.

8. R.C.E. remained at Hennepin County Medical Center until his discharge on August 10, 2016. His initial diagnosis was as follows: 25% TBSA second degree, partial thickness burns to neck, left arm, right hand, left hand, back, groin, buttock, upper right leg, upper left leg, lower right leg and lower left leg; and Child Abuse. It is noted his discharge diagnosis included delayed development secondary to malnutrition, and he was placed on a feeding tube for approximately 10 days.

9. Medical records reflect that R.C.E. underwent an MRI which identified a Traumatic Brain Injury (TMI) involving chronic hemorrhage, as well as malnutrition. His records revealed no weight gain from two years 10 months of age to four years. There were also impressions of prior fractures in his right elbow and seventh and eight ribs. The humerus fracture in the right arm is seen in accidental and inflicted injuries in children. There was "scalp swelling and chronic staining/hemorrhage in the brain" which was "concerning of direct impacts/blows to the head" and "clinically diagnostic of child physical abuse or inflicted injury." Reports state, "The healing rib fractures are consistent with blunt force trauma or direct impact/blows to the chest wall. These are rare fractures in children and do not occur as the result of simple falls/injury." They also noted that due to the extent/severity of the immersion injury and lack of medical attention, R.C.E. was at a significant risk for permanent injury, morbidity, and mortality.

10. At the hospital, Crow Eagle again relayed that he had noticed R.C.E. "walking funny," but thought it was his shoes. He said that the last few days Left Hand had been keeping R.C.E. dressed in long-sleeved shirts and pants and would not let him in the bathroom when R.C.E. was in there, even locking the door, which he stated she had never done before. When confronted about seeking ointment, Crow Eagle became quiet and said he wanted to help him and wanted the ointment for "his whole body," although he had previously denied seeing his body. One of the officers confronted him and asked, "When did you know that your son looked like that?" Crow Eagle did not respond. When asked if it was before or after he went to the hospital for the ointment, he said before. He stated he had been very upset and told Left Hand that "This is serious… the feds are going to get involved." Crow Eagle said Left Hand threatened to kick him out if he called an ambulance.

11. Both Crow Eagle and Left Hand were arrested. R.C.E. was photographed and was asked how he got his "owies," to which he responded, "Mom put me in hot water." Officers noted his eye bruising was beginning to darken, also signaling a recent injury.

12. When Left Hand was interviewed by investigators the following day, she stated that R.C.E. had pooped in the night and she sent him into the shower. Following several inconsistencies, she admitted that she placed R.C.E. in the bath tub. She explained that she turned on the hot water and placed him in the bathtub, at which time he started screaming that it was too hot. She told him to lie down in the tub while she started to wash him. She later clarified that she was holding R.C.E. down with two arms and held his arms in place while she washed him, holding him there between three to five minutes in the water. These stories again differed from her version of the events during the presentence investigation interview in March 2017.

11

13. During the presentence interview the defendant stated she was high on Coricidin when she noticed R.C.E. defecated in his pants. She stated the water heater did not work so she placed R.C.E. in the bathtub while she heated a bowl of water for five minutes. Not paying attention, the water came to a boil and she dumped the boiling water over R.C.E. to give him a warm bath. She heard him scream and took him out of the water. She did not want to take him to the hospital because she feared she would be in trouble and her children would be taken from her. The defendant added during the presentence interview she knew R.C.E. was injured because he would cry in pain and was not eating. She applied petroleum jelly to the burns thinking it would help.

14. Further investigation revealed that Left Hand and Crow Eagle would leave the children home alone, locked in the home with a padlock on the outside of the door. Between July 11, 2016, and July 14, 2016, Seth Ramsey, who stayed at the house frequently, confirmed that he and his girlfriend went to the house to retrieve items. When Crow Eagle and Left Hand's car were not there, they went to the door to see if anyone was inside. The padlock was on the outside of the door securing it closed. Crow Eagle and Left Hand pulled up in their vehicle at that time. They unlocked the padlock and two children, R.C.E. and S.Y.E., were standing inside. S.Y.E. was Left Hand's three-year-old daughter. Ramsey believed this happened quite frequently. He recalled that on July 7, 2016, he had given Left Hand a ride home and the two children were also padlocked inside alone

See Doc. No. 64, ¶¶ 4-14. Left Hand was given a substantial reduction in sentence when the Court accepted a plea agreement to an Information removing the mandatory minimum sentence of 25-years and sentencing the Defendant to a term of 20 years' imprisonment which was later reduced to 15-years.

Suffice it to say, Left Hand's offense conduct was shocking and horrific. See Doc. No. 64, ¶¶ 4-14. Left Hand is responsible for severely burning a 4-year-old child and not providing him medical attention after he suffered life threatening injuries. Left Hand admitted she knew the child was in pain and not eating but neglected to seek medical treatment for fear of getting in trouble. Law enforcement located the child 4-5 days after the injuries, and he was airlifted to a burn center in St. Paul, Minnesota, where he spent 24 days being treated for his severe burn injuries. The victim was diagnosed with a traumatic brain injury, multiple prior fractures, and malnutrition.

In addition, while incarcerated Left Hand has received numerous incident reports. See Doc. No. 154- 5. The BOP has taken steps to ensure Left Hand's safety. Once the BOP was made aware of the allegations of sexual assault upon Left Hand, they transferred her out of FCI Dublin to another BOP facility. Left Hand is currently serving her sentence at FCI Greenville in Greenville, Illinois. Left Hand's presumptive release date is June 8, 2028. The BOP has services and programs available to treat victims of sexual abuse and those services have been made available to Left Hand. See Doc. No. 154-6. Thus, it appears the BOP has taken reasonable steps necessary to ensure Left Hand's safety and address her treatment needs.

The Court concludes Left-Hand has failed to sustain her burden of proof to demonstrate an "extraordinary and compelling reason" that would warrant a sentence reduction at this stage. In addition, the sentencing factors under 18 U.S.C. § 3553(a) factors, especially the need for adequate punishment given the nature and circumstances of the serious offenses, weigh against any sentence reduction at this time.

### III. CONCLUSION

Accordingly, the Defendant's motion to reduce sentence (Doc. No. 152) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 13th day of February, 2024.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court